BRITTON v. MUTUAL BENEFIT LIFE INSURANCE COMPANY.

*Insurance — life policy — false statements in application — when they avoid policy.*

An applicant for insurance on his life, stated that he had no disease of the kidneys or bladder, and that he had not had any sickness within the last ten years. His family physician stated that he had two years previously prescribed for the applicant for bilious fever, and that the applicant had no symptoms of disease of the liver or kidneys, or any organic disease. The applicant signed an agreement that the answers should form the basis of the contract between himself and the insurance company, and a statement that he knew that if untrue they would avoid the policy. For some years previous to the time of application applicant had had an affection of the kidneys, but his family physician and other physicians testified that it was not organic. Applicant died of an over-dose of laudanum. *Held*, that the statements as to kidney disease were untrue and avoided the policy.

EXCEPTIONS ordered to be heard in the first instance at general term, upon a motion for a new trial by the plaintiff Oscar F. Britton, who was nonsuited at the circuit. The facts appear in the opinion.

MULLIN, P. J. This action was brought to recover the sum of $2,000 upon a policy of insurance issued by the defendant upon the life of one George J. M. Andrews, dated the 19th of April, 1869.

The insured died on the 23d day of June, 1870, at the city of Philadelphia, from the effects of an over-dose of laudanum. Before his death he had been declared a bankrupt, and his assignee had sold and transferred the said policy to the plaintiff, by whom this action was brought.

By the regulations of the company, applicants were required to answer certain specific questions in regard to their health and whether they had certain enumerated diseases. Questions on the same subject were put to the family physician and to a personal friend of the applicant, and, upon the answers to those questions, the officers of the company determined whether they would insure the applicant's life.

The concluding question of the series put to Andrews on the application was, as to whether he was aware that any untrue or fraudulent allegation made in effecting the insurance rendered the policy void, and he answered that he was. He accompanied his answer with the agreement signed by him that the answers made by himself, his physician and friend should be the basis of the contract between himself and the company.

The following is question numbered 10 of the series put to the applicant: "Has the party had since childhood disease of the heart, * * * liver complaint, bilious colic, paralysis, * * * disease of the kidneys or bladder, and which?" To this question he answered No.

Question No. 11 was: "Has the party had any sickness within the last ten years, and if so what?" To this he answered No.

Question No 12 was: "Has the party now any disease or disorder, if so what?" To this he answered No.

William Baker, the friend of Andrews, was asked whether he "knew or had heard that the applicant was ever afflicted with rheumatism, etc., * * * or any other disorder tending to shorten life?" He answered No.

He was also asked whether he esteemed the applicant a healthy man and free from any circumstance tending to shorten life. And he answered no. He was also asked whether he knew of any reason

not alluded to in the questions put to him why the applicant was not safely insurable? He answered he did not.

The physician was asked for what disease he had prescribed for the applicant and when? He answered that he had two years before for bilious fever. He was also asked whether the applicant had at any time dropsy, bilious colic, palsy, symptoms of disease of the liver or kidneys or any organic disease, and he replied he had not. He was asked whether the applicant had any predisposition to any disease hereditary or otherwise, and if so, what? and he answered none. He was also asked whether he believed the applicant to be at the time of answering the question in good health, and replied that he did.

On the trial it was proved by the physician who attended the insured in his last illness that he was afflicted with inflammation of the kidneys, and that had caused gravel. He was dropsical, and, in the opinion of this physician, his disease was of long standing, that it would cease for a time, and when the patient got cold it would return again.

The wife of Andrews testified that her husband was very sick in the spring of 1867, about a fortnight. The disease was kidney complaint. After that he took medicine for the kidneys, and was troubled with them. He had another attack, she thought, in 1868; he continued to take medicine for his kidneys to the time of his death.

Dr. Brinkerhoff testified that he attended Andrews in 1866, and thought at that time his secretions were all deranged, he was very sick, and after that witness prescribed for him for a disordered condition of kidney and liver, and sometimes of the stomach. The disease for which witness treated him, when he was very sick, was not exactly bilious fever. There was derangement of the liver and biliousness arising from that; it was temporary not organic; he could not say there was any real disease; Andrews was subject to attacks of liver and kidney quite often.

Dr. Armstrong, the family physician of Andrews, to whom the questions were addressed by the company, and upon the answers to which the risk was taken, testified that Andrews was very sick in 1867, from derangement of the liver and want of secretions of the kidneys. The secretions of the liver had become obstructed by reason of the condition the system was in; attended him off and on for two years; prescribed for him again for same disease in 1868.

. The witness was called on to explain why, with the knowledge he had of Andrews' condition in April, 1867, he should have answered the questions put to him by the company as he did, and the explanation is very discreditable to him as a physician and a man. He attempted in his evidence to excuse his answers to the company by saying that he knew the applicant's condition, and told him when he applied to him to answer the questions of the company that he could not answer them truthfully and favorably to the application, but as his application for insurance had once before been favorably received by the company, he would leave with the company to take the risk or not, he answering the questions favorably for the applicant. When he said in answer to the questions of the company that Andrews did not have any of the diseases mentioned in the question or any tendency, he meant he (Andrews) had no organic disease nor any tendency to such a disease, but I understand the witness to concede that A. had a functional disease of the liver and kidneys. Other evidence was given to the same effect.

On the part of the plaintiff Dr. Pease was called, who testified that he examined Andrews for the defendant in 1869; made a careful examination and was told by Andrews of the appearance and condition of his urine, and of pain in his back, and concluded there was no organic disease of the liver, kidneys or bladder; that the condition of those organs did not indicate that they were diseased. Dr. Briggs testified that he examined Andrews in 1867, for the defendant, and found no indication of kidney complaint; he came to the conclusion that the life was healthy. Sediment in urine is no indication of any organic disease of the kidney; it may be evidence that the kidneys are doing their work, throwing off the bad matter of the system.

If a man is afflicted every year by trouble of his kidneys, and his water becomes thick with reddish sediment, and he frequently takes medicine for it, and within two years gravel sets in, disease of the kidneys would be indicated; but not an organic disease. An accurate opinion as to a disease of the kidneys cannot be formed from an inspection of the water; it must be examined by the microscope and by chemical tests.

If the question to be determined was whether Andrews had any organic disease of the liver, kidneys or bladder, it should have been submitted to the jury, as upon it there was conflicting evidence.

That was not the question. It was, whether he had disease of those organs, or of either of them; and fair dealing demanded that the facts relating to the condition of those organs should have been disclosed. If a disease is functional merely, that confines a man to his bed every few months and makes him very sick, and requires the almost constant use of medicines to keep the kidneys, etc., in order, the company that is called upon to stake money on his life should know it. A functional disease that makes a man very sick may endanger his life, or at least may suddenly pass from a functional to an organic disease.

Again, Andrews falsely told the company that he had not had any sickness within the preceding ten years.

The physician, however, answered the question by saying he had had bilious fever within that time. If that had been the only disease he had had within the ten years, the answer of Andrews would not have been fatal to the policy; but Andrews' wife and daughter testify that he had been sick twice within ten years with disease of the kidneys. Neither of these sicknesses was communicated to the company.

These misrepresentations or concealments are fatal to the policy. The evidence in regard to them is uncontradicted and unexplained, and it was the duty of the judge of the circuit to nonsuit the plaintiff.

The motion for a new trial must be denied, and judgment ordered for the plaintiff on the verdict.

*Judgment accordingly.*